The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Theresa Stephenson. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
**************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff-employee and defendant-employer at the time of the alleged injury.
3. The plaintiff's average weekly wage will be determined by an Industrial Commission Form 22, received by the Deputy Commissioner 14 February 1997.
4. Liberty Mutual Insurance Company is the carrier on the risk.
5. All parties have been properly designated and there is no question as to misjoinder or nonjoinder of parties.
6. Defendant's Answers to Plaintiff's Request for Production of Documents are admitted as Stipulated Exhibit #2.
7. Plaintiff's employment records from defendant-employer are admitted as Stipulated Exhibit #3.
8. Plaintiff's medical records regarding this claim are admitted as Stipulated Exhibit #4.
9. A video of the plaintiff's job duties at defendant-employer, received by the Deputy Commissioner 29 January 1997, is admitted as Stipulated Exhibit #5.
10. The medical opinion of doctors Johnson, Subin, Jarjour, Erdoes and Dameron are received into evidence.
11. The issues to be determined by The Full Commission are whether plaintiff suffers from a compensable occupational disease; and if so, what, if any, benefits is she entitled to.
*************
The Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing of the above captioned matter, Plaintiff was a 56 year old right hand dominant female who had completed the sixth grade of elementary school.
2. Plaintiff's prior work experience included work as a farm laborer, work at a corn processing plant and laborer at a chicken processing plant.
3. Plaintiff became employed with Defendant-Employer on July 12, 1984 as an air-gun operator on Defendant-Employer's assembly line placing hinges on storm doors. Plaintiff was employed by Defendant-Employer on the first shift. Plaintiff's shift began at 7:00 a.m. and concluded at 3:30 p.m., Monday through Friday, and sometimes Saturday. Plaintiff received a morning break of 15 minutes, a lunch break of 30 minutes and an afternoon break of 10 minutes. Plaintiff's average weekly wage of $203.99 yielding a compensation rate of $136.00.
4. As part of Plaintiff's duties as an air-gun operator, Plaintiff would utilize a right handed air-gun and place four hinges onto the storm door. Each hinge contained two screw holes. Minimum production levels for Plaintiff's assembly line was 400 storm doors per day.
5. In September of 1993, Plaintiff reported increased pain in her right hand and wrist to Defendant-Employer. Plaintiff was seen by the company nurse and referred to Dr. Charles T. Johnson of Red Springs, NC.
6. Plaintiff was first seen by Dr. Johnson on September 21, 1993. It was Dr. Johnson's recommendation that Plaintiff should be restricted from using the air-gun due to traumatic tendonitis of her right hand.
7. Plaintiff was seen again by Dr. Johnson on October 15, 1993. Between September 21, 1993 and October 15, 1993, Plaintiff was treated conservatively with a wrist splint and anti-inflammatory medication. On October 12, 1993, Dr. Johnson referred Plaintiff to Dr. Glen Subin of the Mid-South Orthopedic Clinic.
8. Plaintiff was first seen by Dr. Subin on October 15, 1993. Dr. Subin performed a physical examination and took x-rays of Plaintiff's hand. It was Dr. Subin's impression that Plaintiff suffered from right hand pain with possible collagen vascular disease (scleroderma). Dr. Subin recommended that Plaintiff undergo a series of blood tests. Dr. Subin also opined that "in light of the fact that the patient does do a production job with a lot of use of her hands, I do believe her problem is directly related to her work." Further Dr. Subin stated "based on the job description and video tape, I think Plaintiff was at a greater risk of developing hand pain."
9. On October 28, 1993, due to Plaintiff's worsening condition, Plaintiff took a medical leave of absence from Defendant-Employer.
10. Plaintiff's blood test revealed Plaintiff had normal thyroid studies, negative rheumatoid factor, and negative ANA. Dr. Subin referred Plaintiff to Dr. Diane Subin for a skin biopsy.
11. On November 4, 1993, Dr. Diane Subin restricted Plaintiff from returning to work until further notice.
12. Plaintiff's biopsy demonstrated nonspecific findings. Dr. Subin was unable to form a clear cut diagnosis as to Plaintiff's right hand pain and referred Plaintiff to Dr. Wael Jarjour of the UNC Rheumatology Department at Pinehurst Orthopedic Clinic.
13. Plaintiff was seen numerous times by Dr. Jarjour between December 9, 1993 and September 11, 1996. Dr. Jarjour indicated possible scleroderma of the hands. Dr. Jarjour certified that Plaintiff was no longer able to work and should not continue to expose herself to any vibratory movement. Plaintiff was ultimately referred by Dr. Jarjour to Dr. Luke Erodoes of the Pinehurst Surgical Clinic.
14. Plaintiff was first seen by Dr. Erdoes on 21 June 1996. It was Dr. Erdoes' opinion that Plaintiff's right hand and right extremity pain was the result of reflex sympathetic dystrophy.
15. After a series of sympathetic blocks, Plaintiff underwent a thoroscopic sympathectomy which was performed on 25 September 1996. Following the surgery performed by Dr. Erdoes, Plaintiff received complete relief from her right hand and right extremity pain and at that time of the hearing only suffers occasional swelling when she overuses her hand.
16. It was Dr. Erdoes' opinion that as on 31 January 1997, Plaintiff would not be able to return to her position as air-gun operator with Defendant-Employer.
17. At the time of the hearing of the above captioned matter, Plaintiff had not worked for Defendant-Employer since 28 October 1993, had not worked for any other employer since taking her medical leave of absence with Defendant-Employer and was receiving social security disability.
18. As a result of Plaintiff's employment with Defendant-Employer, Plaintiff suffered from reflex sympathetic dystrophy which caused disabling right hand pain and right extremity pain.
19. Plaintiff's employment with Defendant-Employer placed Plaintiff at an increased risk of developing reflex sympathetic dystrophy which caused right hand pain and right extremity pain than members of the general public not so employed.
20. As a result of her occupational disease, plaintiff has been unable to earn wages in her former position with defendant-employer or in any other employment from 28 October 1993 through the present and continuing.
21. This Commission gives great weight to the opinion of Drs. Glen Subin and Jarjour concerning Plaintiff's occupational disease.
*************
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff's right hand pain and right extremity pain is due to causes and conditions characteristic of and peculiar to her employment, is not an ordinary disease of life to which the general public not so employed is equally exposed and is, therefore, an occupational disease within the meaning of N.C. Gen. Stat. § 97-53 (13).
2. As a result of Plaintiff's contraction of her right hand pain and right extremity pain, Plaintiff is entitled to temporary total disability compensation beginning 28 October 1993 and continuing at a rate of $136.00 per week as long as she remains temporarily totally disabled or until further order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to payment of all medical expenses incurred, or to be incurred by the Plaintiff as a result of her contraction of right hand pain and right extremity pain, so long as such examinations, evaluations and treatments may reasonably be required to affect a cure or give relief, or will tend to lessen Plaintiff's period of disability. N.C. Gen. Stat. § 97-59; N.C. Gen. Stat. § 97-2 (19).
*************
Based on the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Plaintiff's claim for Worker's Compensation benefits as a result of her occupational disease is GRANTED.
2. Defendants shall pay temporary total disability compensation to Plaintiff at the rate of $136.00 per week from 28 October 1993 and continuing until further order of this Commission.
3. Defendants shall pay all medical expenses incurred by Plaintiff as a result of her compensable occupational disease when the same shall have been submitted through the Defendant-Carrier to the Industrial Commission and approved by the Industrial Commission.
4. A reasonable attorney fee of twenty-five percent of the compensation due Plaintiff under Paragraph 2 of this AWARD is approved for Plaintiff's counsel and shall be paid as follows: twenty-five percent of the accrued compensation due Plaintiff under Paragraph 2 of this AWARD shall be deducted from that sum and paid directly to Plaintiff's counsel. Thereafter, every fourth check due Plaintiff under Paragraph 2 of this AWARD shall be deducted from the sum due Plaintiff and paid directly to Plaintiff's counsel.
5. Defendants shall pay all expert witness fees associated with this claim.
6. Defendants shall pay the costs.
7. Defendant's motion to dismiss is DENIED.
This the _____ day of March 1998.
 S/ ____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ______________ CHRISTOPHER SCOTT COMMISSIONER
DISSENTING:
S/ ______________ DIANNE C. SELLERS COMMISSIONER
TJB/cnp/db